UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.
    501 Front Street
    Norfolk, VA 23510

*Plaintiff,*

v.

SHORE TRANSIT
    31901 Tri-County Way, Suite 133
    Salisbury, MD 21804

BRAD BELLACICCO, in his official capacity
as the Director of Shore Transit
    31901 Tri-County Way, Suite 133
    Salisbury, MD 21804

TRI-COUNTY COUNCIL OF THE LOWER
EASTERN SHORE OF MARYLAND
    31901 Tri-County Way, Suite 201,
    Salisbury, MD 21804

*Defendants.*

Civil Action No. __-___

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of First and Fourteenth Amendment Rights)

**PRELIMINARY STATEMENT**

1.      Shore Transit, a division of the Tri-County Council for the Lower Eastern Shore of Maryland, is responsible for operating the public transit system in Somerset, Wicomico, and Worcester Counties.

2.      In May 2020, People for the Ethical Treatment of Animals, Inc. (ōPETAö), a nonprofit animal rights membership corporation, applied to advertise on the interior of buses operated by Shore Transit.

1

3.      PETA's advertisements, which feature the slogan, "No One Needs to Kill to Eat," advocate the closure of animal slaughterhouses. Shore Transit denied the applications, responding that the advertisements were "too offensive for [its] market and political in nature."

4.      PETA renewed its application to run the proposed advertisements on July 22, 2021. To date, PETA has received no response to its renewed request.

5.      A public records request filed by PETA revealed that Shore Transit's advertising policy prohibits the display of advertisements that are "political," "controversial," "offensive," "objectionable," or "in poor taste."

6.      Shore Transit's advertising policy, and Defendants' denial of PETA's proposed advertisements pursuant to that advertising policy, violate PETA's rights under the First and Fourteenth Amendments to the United States Constitution. The policy's sweeping prohibitions afford enforcement officials unfettered discretion; they are also incapable of reasoned application, content and viewpoint discriminatory, substantially overbroad, and unconstitutionally vague.

7.      PETA still wishes to promote the same or similar advertisements advocating for animal rights in Shore Transit advertising spaces. PETA also anticipates that it will want to place other advertisements on Shore Transit advertising spaces; because of PETA's focus on animal rights, those advertisements are likely to be deemed by Shore Transit to be "political," "offensive," "controversial," "objectionable," or "in poor taste."

8.      PETA is suffering irreparable injury during the time its advertisements are not permitted on Shore Transit advertising spaces.

9.      Therefore, PETA brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 to vindicate its rights under the First and Fourteenth Amendments to the United States Constitution.

## PARTIES

10.     Plaintiff PETA is a 501(c)(3) non-profit corporation. It is the largest animal rights organization in the world, with more than 6.5 million members and supporters. Committed to fighting animal exploitation and asserting animals' rights to have humans consider their best interests and to be free from suffering, PETA advocates against the pain caused to animals in laboratories, in the food industry, in the clothing trade, and in the entertainment industry, as well as in other contexts.

11.     Defendant Tri-County Council of the Lower Eastern Shore of Maryland is a regional council of governments established by the Maryland legislature for the purposes of promoting physical, economic, and social development in the region.

12.     Defendant Shore Transit, a division of the Tri-County Council for the Lower Eastern Shore of Maryland, is the public transit agency for Somerset, Wicomico, and Worcester Counties.

13.     Defendant Brad Bellacicco is the Director of Shore Transit. He is sued in his official capacity.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C.§ 1331(a) and § 1343(a)(3) and (4).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201  and 2202 to declare the rights of the parties and to grant all further relief found necessary and  proper.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that the events which form the basis for this action took place in this District, Defendants legally reside in  this District, and Defendants' conduct is causing ongoing harm to PETA in this District.

## STATEMENT OF FACTS

### Shore Transit's Advertising Spaces and Ad Review Process

16.     Shore Transit operates the public bus system for Somerset, Wicomico, and Worcester Counties.

17.     In Fiscal Year 2019, Shore Transit served 312,443 passengers.

18.     According to Shore Transit's website, advertising with Shore Transit is "one of the best investments companies make with their advertising dollars." Shore Transit, *Advertising*, http://www.shoretransit.org/BusinessCenter/Advertising.aspx (last accessed Aug. 12, 2021). Shore Transit encourages businesses and organizations to print their advertisements on the exterior and interior of their buses, in bus shelters, and on trash receptacles. These spaces "open the door on a highly visible medium for reaching large audiences of all ages, backgrounds and incomes." *Id.*

19.     Advertising with Shore Transit "allow[s] advertisers to speak directly to transit riders with [ ] external traveling billboards" and provides access to a broad audience, allowing advertisers "to communicate with families and professionals in their vehicles, people walking or shopping and tourists finding their way on the Lower Eastern Shore of Maryland." *Id.*

20.     Shore Transit contracts with an advertising agent, Vector Media, to manage its advertising program. Vector Media sells advertising space on behalf of Shore Transit on static displays on commuter buses, bus shelters, and trash receptacles.

21.     On March 24, 2021, PETA filed a Maryland Public Information Act (MPIA) request with the Tri-County Council. PETA's MPIA requests sought, *inter alia*, "[a]ll documents relating to Shore Transit's standards for accepting or rejecting advertisements, including any advertising policy Shore Transit may administer" and "[a]ll documents concerning Shore Transit's reasons for approving, not approving, or requesting modifications

to advertisements submitted for Shore Transit's system, including any communications with entities that submitted advertisements for approval."

22.    In its responses to these requests, the Tri-County Council identified and produced the following documents: Shore Transit's contract with Vector Media; meeting and agenda minutes; email correspondence concerning Shore Transit's rejection of proposed advertisements promoting cannabis and cannabidiol (CBD) products; and the Maryland Locally Operated Transit Systems (LOTS) manual.

23.    The minutes from the July 29, 2015 meeting of the Tri-County Council Executive Board report that Shore Transit's advertising agency "asked if political advertisements are to be accepted." The minutes reflect that, "[f]ollowing discussion, the Executive Board decided to bring the matter before the Tri-County Council at the September meeting." The minutes for the September 23, 2015 meeting reflect that the Tri-County Council discussed the matter and voted "to not accept political ads."

24.    Shore Transit's contract with Vector Media states that "Vector Media shall follow minimum standards in the approval of submitted advertising that will be displayed in the buses. . . . Political advertisements will not be accepted."

25.    Shore Transit's contract with Vector Media further states that "Shore Transit . . . reserves the right to reject any advertising that it determines to be controversial, offensive, objectionable or in poor taste." It also states that Shore Transit "reserves the right to remove any offensive advertising at any time."

26.    No official documents disclosed pursuant to PETA's MPIA request contain written guidance defining the terms "political," "offensive," "controversial," "objectionable," or "in poor taste" or instructing how to apply these criteria to proposed advertisements.

27.     Upon information and belief, neither Shore Transit nor the Tri-County Council has any written guidance defining the terms "political," "offensive," "controversial," "objectionable," or "in poor taste" or instructing how to apply these criteria to proposed advertisements. If such written guidelines or instructions existed as of the date of PETA's MPIA requests, they would have been subject to disclosure.

28.     In addition to the advertisements at issue in this case, documents produced by the Tri-County Council in response to PETA's public records request identify only one other set of advertisements that has been rejected by Shore Transit— commercial advertisements for medical marijuana. On February 28, 2018, a senior account executive at Vector Media emailed Shore Transit's Director, Brad Bellacicco, informing him that Vector Media had "been approached by several companies in the Medical Cannabis business that would like to spend money on Transit Advertising in Maryland" and asking whether Shore Transit would accept these advertisements. On March 13, 2018, Mr. Bellacicco responded: "I have referred your question to [the Maryland Transit Administration] and the [Tri-County Council] Board. I doubt we will take their money because we are still firing people for smoking cannabis. Would be hypocritical to advertise it when we drug test."

29.     On March 10, 2020, Vector Media's regional manager, Mark Sheely, emailed Mr. Bellacicco to ask whether Shore Transit would accept advertisements from the Hi Tide Dispensary, which "offer[s] legal CBD products and medical Marijuana." Mr. Bellacicco responded: "Sorry but no. We have Federal Transportation funding and comply with FTA Drug and Alcohol testing program. Would be hypocritical to advertise for marijuana and fire people for using it." When Vector Media's representative asked what the response would be if Hi Tide Dispensary "were only to advertise their CBD products," which are legal under

both federal and Maryland law, Mr. Bellacicco responded: "No we need to be careful with

the perception of supporting a position opposed to [the Federal Transit Administration] and

risk our funding."

**PETA's Attempt to Advertise on Shore Transit**

30.     Public transit advertising is one of the major ways in which PETA carries out its

advocacy campaigns. PETA seeks to display advertisements on Shore Transit's system

31.     On May 12, 2020, PETA submitted two proposed advertisements to Shore Transit

via Vector Media, the advertising agency with which Shore Transit contracts. The proposed

advertisements were as follows:






32.     Later that same day, Mr. Sheely forwarded that request via email to Mr.

Bellacicco, the Director of the Shore Transit Division of the Tri-County Council, asking if Vector

Media had permission to sell PETA the exterior bus advertisements.

33.     On May 15, 2020, Mr. Sheely sent a response to PETA's advertisement requests.

He wrote, "Below is the response from Shore Transit about the ads you requested to run on their buses, ÷After considerable consideration, we will decline the PETA ads. We find them too offensive for our market and political in nature."

34.     On June 10, 2020, Gabe Walters, the PETA Foundation's Manager of Litigation and Legislative Affairs, sent a demand letter on behalf of PETA to Shore Transit. The demand letter was addressed to Joseph Mitrecic, who was then serving as Chair of Tri-County Council Executive Board. It stated PETA's First Amendment concerns, asked for Shore Transit to send him any existing advertising policies, and requested that Shore Transit reverse its decision rejecting PETA's advertisements. Mr. Walters requested that Mr. Mitrecic respond by June 17, 2020.

35.     As of the date of this filing, PETA has not received any response to its demand letter.

36.     On Wednesday, March 31, 2021, one week after PETA filed its MPIA request, Mr. Bellacicco forwarded the email chain between himself and Mr. Sheely to several other Tri-County Council members with a message stating that "[u]pon [ ] Mark Sheely's recommendation and considering the COVID situation unfolding in the area poultry plants, it was decided not to accept these ads. In the past we have rejected one for marijuana dispensary on the grounds we drug test our drivers per Federal law and should not promote the produce [sic] on our buses. . . . Our contract with Vector does allow us to review and reject ads."

37.     On July 22, 2021, PETA wrote to Mr. Sheely to renew its request to run the proposed advertisements on Shore Transit's system. PETA asked for a response to its request by July 30. To date, PETA has not received a response to its request.

38.     PETA still wishes to place the same advertisements, and similar advertisements,

on Shore Transit advertising spaces.

## CAUSES OF ACTION

### COUNT I—42 U.S.C. § 1983
### VIOLATION OF FIRST AND FOURTEENTH
### AMENDMENTS

39.     Plaintiff incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full here.

40.     The First Amendment to the United States Constitution is incorporated against the States by the Fourteenth Amendment to the United States Constitution.

41.     Shore Transit's policy prohibiting advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste," violates the First Amendment both on its face and as applied to PETA.

42.     By opening up advertising space on its property for the purpose of raising revenue, Shore Transit has created a designated public forum or, in the alternative, a limited public forum.

43.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" constitute impermissible content-based  restrictions on speech in a designated public forum, in violation of the Free Speech Clause of the First  Amendment to the United States Constitution.

44.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" are incapable of reasoned application, in violation of the Free Speech Clause of the First  Amendment to the United States Constitution.

45.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" afford

unfettered discretion to enforcement officials, in violation of the Free Speech Clause of the First  Amendment to the United States Constitution.

46.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" discriminate on the basis of viewpoint, in violation of the Free Speech Clause of the First  Amendment to the United States Constitution.

47.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" are substantially overbroad.

### COUNT II—42 U.S.C. § 1983
### VIOLATION OF FOURTEENTH AMENDMENT

48.     Plaintiff incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full here.

49.     Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" are impermissibly vague, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution because they do not provide adequate notice about what speech is prohibited and invite arbitrary or selective enforcement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that the Court enter judgment in its favor and against Defendants, and award relief as follows:

a.     A declaration that Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste" violate the First and Fourteenth  Amendments to the United States Constitution, both on their face

and as applied;

b.     A preliminary and permanent injunction requiring Defendants to accept the two proposed advertisements submitted by PETA and to run them on the same terms offered to other advertisers on Shore Transit's system;

c.     A preliminary and permanent injunction prohibiting Defendants from enforcing Shore Transit's prohibitions against advertisements that Shore Transit deems to be "political," "offensive," "controversial," "objectionable," or "in poor taste";

d.     An award of costs and attorneys' fees; and

e.     Any other relief that this Court deems just and proper.

August 16, 2021                              Respectfully submitted,

Brian M. Hauss*                              /s/
American Civil Liberties                     Robin R. Cockey, Federal Bar No. 02657
  Union Foundation                           Cockey, Brennan & Maloney, PC
125 Broad Street, 18th Floor                 313 Lemmon Hill Lane
New York, NY 10004                           Salisbury, MD 21801
T: 212.549.2500                              T: 410.546.1750
F: 212.549.2654                              F: 410.546.1811
bhauss@aclu.org                              rrcesq@cbmlawfirm.com

* *pro hac vice* application forthcoming     *Counsel for Plaintiff*